T.C. Memo. 2015-116

UNITED STATES TAX COURT

DON WARNER REINHARD, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4589-12.                    Filed June 24, 2015.

Don Warner Reinhard, pro se.

<u>Miriam C. Dillard</u>, <u>A. Gary Begun</u>, and <u>Caroline R. Krivacka</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  By notice of deficiency dated November 15, 2011,

respondent determined a deficiency in petitioner's Federal income tax for 2001 of

**[\*2]** $216,498 and a penalty for fraud under section 6663 of $162,374.[1] Apart from computational matters, the issues for decision are (1) whether petitioner improperly claimed a loss deduction of $554,622 from his wholly owned subchapter S corporation for 2001 and (2) whether the underpayment attributable to the claimed loss deduction was due to fraud, justifying the penalty and negating the bar of the statute of limitations. We answer both questions in the affirmative.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Georgia when the petition was filed.

Petitioner was an experienced and successful investment adviser. He holds a bachelor's degree in finance and a master's degree in business administration. During 2001 petitioner owned Magnolia Capital Management, Inc. (MCM), a subchapter S corporation. MCM was the sole owner of a limited partnership called Magnolia Capital Management, LP (MCM LP). MCM LP was a general partner of several hedge funds that managed investments for petitioner's clients.

---

[1]All section references are to the Internal Revenue Code as in effect for the tax year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*3] For 2001 both MCM and MCM LP reported the same $38,013 as their only income.

On April 2, 2003, petitioner filed his 2001 Federal income tax return. The return was prepared by a certified public accountant (C.P.A.). On Schedule E, Supplemental Income and Loss, petitioner claimed a flowthrough loss of $516,609 from MCM. Although MCM did not report a loss on its Form 1120S, U.S. Income Tax Return for an S Corporation, petitioner claimed a loss deduction of $554,622 on his own tax return and applied it against the $38,013 of passthrough income he reported from MCM. The deduction was characterized in a statement attached to petitioner's 2001 return as "General Partner Expenses paid to reimburse".

Petitioner claimed the deduction for payments he allegedly made to his clients to reimburse them for their losses in the hedge funds. Petitioner did not provide any detailed information or documentation about these payments to the C.P.A. who prepared his return. He simply told the C.P.A. to use the $554,622 expense on his 2001 income tax return.

Ten days after petitioner filed his 2001 return, he submitted a different version of the return to a bank while applying for a loan. This version omitted the $554,622 deduction petitioner claimed on his filed tax return.

[*4]   From December 2002 through June 2003 petitioner engaged in a fraudulent scheme to retain his hedge fund clients during a tumultuous year.  During this time, petitioner provided his clients with false quarterly account statements showing materially inflated account values.  When margin calls on these accounts were issued in August 2003, his clients' accounts were dissolved in a single day.  Some of the clients sued petitioner to recover their lost funds.

On November 3, 2006, as litigation with these clients was pending, petitioner voluntarily filed a petition with the U.S. Bankruptcy Court for the Northern District of Florida under 11 U.S.C. chapter 7, No. 06-50298-KKS.  During the bankruptcy proceedings petitioner failed to report numerous assets on his bankruptcy schedules, including two boats, a Harley Davidson motorcycle, investment accounts, and $40,000 of artwork.

On October 21, 2008, petitioner was indicted in the U.S. District Court for the Northern District of Florida on 23 counts of criminal misconduct.  United States v. Reinhard, No. 4:08-Cr-00049-RH-CAS (N.D. Fla. filed Oct. 21, 2008).  On May 13, 2009, petitioner pleaded guilty to seven counts of the indictment, including:  (1) making false statements on his 2001 and 2002 income tax returns, in violation of section 7206(1); (2) making false statements on a loan application,

**[*5]** in violation of 18 U.S.C. sec. 1014; and (3) transferring assets and concealing them from the bankruptcy trustee, in violation of 18 U.S.C. sec. 152(7).

In the stipulated factual basis for plea, petitioner admitted that he included a $554,622 fraudulent Schedule E expense as part of his 2001 individual income tax return. He admitted that he underpaid his tax by $216,498 and that his 2001 tax return was materially false as a result of his underreported Schedule E income. The factual basis for plea also showed that petitioner's criminal activity occurred over several years and involved numerous false filings and statements, including filing a fraudulent tax return for 2002.

On April 30, 2012, petitioner submitted a Form 1040X, Amended U.S. Individual Income Tax Return, for 2001. The amended return removed the $554,622 Schedule E deduction and claimed a net operating loss carryback from a subsequent year.[2] Petitioner now argues that the Schedule E deduction should have been claimed for 2002 and 2003.

On January 5, 2011, petitioner submitted documents to respondent in an effort to substantiate the disallowed $554,622 deduction. The documents show

---

[2]Petitioner's amended tax return is unclear as to whether he reported a net operating loss carryback from his 2002 tax return or his 2003 tax return. On his petition, petitioner reported only a net operating loss carryback from his 2002 tax return. Respondent's filings with the Court suggest, and we will assume, that petitioner reported net operating loss carrybacks for both years.

**[*6]** that petitioner made cash transfers from his personal bank account to accounts for the hedge funds. In one instance, a cash transfer was made to a client's bank account in 2002. According to the documents, all of the transfers took place in either 2002 or 2003 and pertain only to $318,906 of petitioner's claimed deductions. Petitioner did not attempt to substantiate the remaining $235,716 on his 2001 return. Petitioner claims that these transfers show that he reimbursed several clients for their investment losses and that he refunded the clients' previously charged management fees. Petitioner claims that instead of distributing cash to the clients, he reimbursed them by increasing their capital accounts in one particular hedge fund managed by MCM LP.

In claiming the deduction, petitioner relies on a letter submitted by a C.P.A. to petitioner's public defender in his criminal case. In the letter, the C.P.A. states that, on the basis of petitioner's representations, he believed petitioner incurred expenses related to these transactions in 2002 and 2003. The C.P.A. did not testify at trial.

OPINION

I. Petitioner's Claimed Schedule E Deduction

The Commissioner's determinations set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them

[*7] erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof as to any factual issue should shift to respondent under section 7491(a).

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". A necessary expense is one that is "appropriate and helpful" to the taxpayer's business, while an ordinary expense is one that is common or frequent in the type of business in which the taxpayer is engaged. Deputy v. du Pont, 308 U.S. 488, 495 (1940); Welch v. Helvering, 290 U.S. at 113. The taxpayer bears the burden of proving that reported expenses are ordinary and necessary. See Rule 142(a). The taxpayer also bears the burden of substantiating expenses underlying claimed deductions. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

Respondent determined that petitioner improperly claimed a passthrough loss deduction of $516,609 from MCM for 2001. The loss resulted from a deduction of $554,622 against $38,013 of income that MCM reported for that year. Petitioner concedes that the deduction should not have been claimed for 2001. Instead, on his amended return petitioner claims his income for 2001 was fully offset by a net operating loss carryback from 2002 and 2003.

[*8] Petitioner has not provided any evidence of a net operating loss for 2002 or 2003, and we have no way of determining from the record whether a net operating loss was available for these years. See sec. 1.172-1(c), Income Tax Regs. ("Every taxpayer claiming a net operating loss deduction for any taxable year shall file with his return * * * a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction."); see also Ames-Mechelke v. Commissioner, T.C. Memo. 2013-176; Philpott v. Commissioner, T.C. Memo. 2012-307. Regardless of whether petitioner had verifiable expenses in 2002 when he transferred money from his personal bank account to the bank account of a client, we cannot determine that he had an aggregate net operating loss for that year.

Accordingly, we sustain respondent's deficiency determination for the 2001 tax year.

II.     Fraud Penalty

If any part of any underpayment of tax required to be shown on a return is due to fraud, section 6663(a) imposes a penalty of 75% of the portion of the underpayment due to fraud. Fraud is an intentional wrongdoing on the part of the taxpayer with the specific purpose of evading a tax believed to be owing. Edelson

[*9] v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), aff'g T.C. Memo. 1986-223; DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). The Commissioner has the burden of proving fraud, and he must prove it by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Langille v. Commissioner, T.C. Memo. 2010-49, aff'd, 447 Fed. Appx. 130, 134 (11th Cir. 2011). To sustain his burden, the Commissioner must establish two elements: (1) that there was some underpayment of tax for the taxable year at issue and (2) that at least some portion of the underpayment was due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). If the Commissioner proves that any portion of an underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud unless the taxpayer shows by a preponderance of the evidence that some portion was not so attributable. Sec. 6663(b).

A.     Underpayment of Tax

Petitioner's conviction pursuant to section 7206(1) for filing a false return for 2001 estops him from contesting that an underpayment exists for that year. See Considine v. United States, 683 F.2d 1285, 1287 (9th Cir. 1982); Wright v. Commissioner, 84 T.C. 636, 643-644 (1985); McGowan v. Commissioner, T.C. Memo. 2004-146, aff'd, 187 Fed. Appx. 915 (11th Cir. 2006).

**[*10]** B.     Fraudulent Intent

Under usual circumstances, fraud is rarely admitted and direct evidence of the taxpayer's intent is rarely available.  In these instances fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts.  Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

Petitioner admitted as part of his plea agreement that he "included as part of his return a fraudulent Schedule E expense of $554,622".  Therefore, petitioner had admitted to fraud and is liable for the civil fraud penalty under section 6663(a) for the 2001 tax year.  See Abdallah v. Commissioner, T.C. Memo. 2013-279 (holding that taxpayer's admissions of fraud in plea agreement established fraudulent intent); Price v. Commissioner, T.C. Memo. 1996-204.  Nevertheless, for the sake of thoroughness, we will examine whether petitioner meets the circumstantial test for fraud.  We hold that he does.

Circumstances that may indicate fraudulent intent, commonly referred to as "badges of fraud", include but are not limited to:  (1) understating income; (2) maintaining inadequate records; (3) giving implausible or inconsistent explanations of behavior; (4) concealing income or assets; (5) engaging in illegal activities; (6) providing incomplete or misleading information to one's tax

**[*11]** preparer; (7) the lack of credibility of the taxpayer's testimony; and (8) filing false documents, including false income tax returns. Spies v. United States, 317 U.S. 492, 499 (1943); Morse v. Commissioner, T.C. Memo. 2003-332, aff'd, 419 F.3d 829 (8th Cir. 2005). No single factor is dispositive; however, the existence of several factors is persuasive circumstantial evidence of fraud. Vanover v. Commissioner, T.C. Memo. 2012-79.

Numerous badges of fraud demonstrate that petitioner intentionally evaded the payment of tax he knew to be owed. He substantially understated his income for the year at issue and other years by claiming deductions he was not entitled to. See Hatling v. Commissioner, T.C. Memo. 2012-293. He maintained inadequate records, and the records he produced lacked credibility and did not substantiate his claims. See Sowards v. Commissioner, T.C. Memo. 2003-180. His behavior was inconsistent and implausible when he reported substantially higher income on his loan application than on his Federal income tax return and offered no logical explanation for this behavior. See Powerstein v. Commissioner, T.C. Memo. 2011-271. He attempted to conceal assets during his bankruptcy proceeding. See Bussell v. Commissioner, T.C. Memo. 2005-77, aff'd, 262 Fed. Appx. 770 (9th Cir. 2007). And he was convicted of willfully filing a false income tax return for 2001. See Wright v. Commissioner, 84 T.C. at 643-644.

[*12] Nevertheless, petitioner argues that he lacked the requisite intent for fraud because the deduction was appropriate and should have been claimed for 2002 and 2003. Petitioner claims that he incurred expenses in 2002 and 2003 to reimburse his clients for their investment losses. To bolster his argument, petitioner points to an opinion letter submitted by a C.P.A. to petitioner's public defender in his criminal case. In the letter the C.P.A. acknowledges that petitioner withdrew money from his personal bank account and transferred it to other accounts, but the C.P.A. does not make an objective determination of the purpose of the transfers. The C.P.A. merely relies on petitioner's representations. Furthermore, the C.P.A. acknowledges that determining whether petitioner's reimbursements to clients were ordinary and necessary business expenses under section 162 was outside the scope of his opinion letter.

When he filed his original 2001 tax return in 2003, petitioner was aware that the payments he reported would have been made in 2002 or 2003, not in 2001. Yet he directed his C.P.A. to claim a deduction for the payments for 2001 without any explanation. Petitioner is an intelligent and well-educated businessman, and we find that he knew that a cash method taxpayer can claim a deduction for an expense only for the year in which it is paid. See Black v. Commissioner, T.C. Memo. 2007-364.

**[*13]** We find that the facts, taken as a whole, clearly and convincingly establish that petitioner acted with fraudulent intent and that the underpayment attributable to his claimed loss deduction of $554,622 from his wholly owned subchapter S corporation was due to fraud.

III.    Statute of Limitations

Generally, the Commissioner must assess tax within three years after a return is filed.  Sec. 6501(a).  There is an exception to this general rule:  "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time."  Sec. 6501(c)(1).  We have held that petitioner's claimed loss deduction was due to fraud.  Therefore, respondent is not time barred from assessing petitioner's 2001 tax liability.  See Romer v. Commissioner, T.C. Memo. 2001-168.

We accordingly sustain respondent's deficiency determination and imposition of the civil fraud penalty under section 6663(a) for the 2001 tax year.

To reflect the foregoing,

Decision will be entered

for respondent.